UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-CR-20187

UNITED STATES OF AMERICA

Plaintiff,

vs.

EDISON ZAPATA-SANCHEZ,
Defendant.
_____/

### REPLY TO PSI ADDENDUM WITH INCORPORATED SENTENCING MERMORANDUM AND MOTION FOR DOWNWARD VARIANCE

Edison Zapata submits this Sentencing Memorandum and Incorporated Motion for Downward Variance in support of a sentence below the guidelines range.

### INTRODUCTION

Mr. Zapata exercised his right to trial and was convicted, but circumstances attendant to Mr. Zapata's offense conduct, the unique facts of this case, Mr. Zapata's personal history and characteristics -- when all taken together – call for a sentence below that suggested by the advisory guidelines.

Such a sentence would be sufficient, but not greater than necessary to vindicate the sentencing imperatives of 18 U.S.C. § 3553(a). *See Kimbrough v. United States*, 552 U.S. 85, 101 (2007). In other words, our proposed sentence would be sufficient to punish Mr. Zapata, deter similar conduct, and serve the purposes of the applicable statutes and

1

Sentencing Guidelines. Accordingly, the Court should (and can) vary downward from the applicable guideline range based on the specific circumstances set forth in this Sentencing Memorandum.[1]

## THE GUIDELINES AND OBJECTIONS

On June 2, 2025, Probation filed the initial Presentence Investigation Report ("PSI") in Mr. Zapata's case recommending a total offense level of 26. [D.E. 103]. On June 16, 2025, Mr. Zapata filed objections to the PSI. [D.E. 104]. On June 17, 2025, the Government filed objections to the PSI. [D.E. 105]. On August 15, 2025, Probation filed an addendum to the PSI reconfiguring the guidelines to reflect agreement with both the government and the defense objections, and adding an additional enhancement not previously reflected in the PSI. [D.E. 114]. The total offense level now recommended by the PSI is a level 30, resulting in an advisory guideline range of 97 to 121 months. For the reasons set forth below, the Court should not adopt recommended guideline range in the PSI because the appropriate total offense level is a level 20, with an advisory guideline range of 33 to 41 months.

### I. Objections to Recommended Guidelines Computation (Paragraphs 47-57)

Mr. Zapata objects to Paragraphs 47-57, which contain the recommended guideline computations, and would result in a Total Offense Level of 30, Criminal History I, and an advisory guideline imprisonment range of 97 to 121 months. [See PSI at pp. 14-15, ¶¶ 17-

---

[1] As the Court is aware, the advisory Guideline range is but one factor to be considered in determining a sentence that is "sufficient, but not greater than necessary." See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007) (quoting § 3553(a))

28]. Specifically, Mr. Zapata objects to paragraphs 49 and 50. Additionally, Mr. Zapata requests that the PSI be updated with Mr. Zapata's most recent medical history.

As to paragraphs 49 (controlled substance enhancement) and 50 (in the business enhancement), the evidence fails to support either of these proposed enhancements. And, as the Court is aware, when the government seeks to apply an offense enhancement under the Sentencing Guidelines over a defendant's factual objection, the Government has the burden of providing reliable and specific evidence in support of the enhancement. *United States v. Washington*, 714 F.3d 1358, 1361 (11th Cir. 2013).

## I. <u>Knowledge/Believe of Controlled Substances USSG § 2S1.1(b)(1)(A)(B)(i)</u>

Paragraph 49 of the amended PSI recommends a six-level enhancement pursuant to USSG § 2S1.1(b)(1)(A)(B)(i) alleging the Defendant knew or believed that the laundered funds involved controlled substances, as either proceeds or at a promotional level. However, this enhancement requires specific and reliable proof that Mr. Zapata subjectively knew or believed the laundered funds were drug proceeds. See, e.g., *United States v. Demarest,* 570 F.3d 1232, 1239 (11th Cir.2009)( upholding the application of the § 2S1.1(b)(1) enhancement in a case where a yacht broker arranged for the sale of a yacht, in an all-cash transaction, to buyers who claimed to be associated with drugs and were likely to use the yacht to smuggle drugs); *United States v. Perez*, 992 F.2d 295, 297 (11th Cir. 1993)(Applying enhancement because "[a]t the time of the transaction, Perez did 'know' that money he was to launder was from a drug deal. The informant told him as much and Perez admitted to having this knowledge at the time of his arrest.")

3

Here, Mr. Zapata picked up cash in substantial quantities from individuals to whom he was connected, via whats app messages, by the money movers in Colombia. He would then deposit that cash into ATMs. The government's most concrete "evidence" of the funds being drug proceeds is an expert opinion describing how traffickers *in general* move money and that the cash in this case fit that profile. But such testimony about typical laundering typologies cannot establish Mr. Zapata's subjective state of mind.

Moreover, the evidence shows only that Mr. Zapata physically deposited cash into bank accounts at the direction of others. He is never depicted as privy to the origin of the funds, and there is no admission, intercepted communication, or coded reference from Mr. Zapata linking the cash to narcotics. Mr. Zapata was recruited by friend Daniel Martinez while Martinez was in the United States, and unlike all other participants, Zapata did not personally know the money movers like "mama ines" or personally interact with them in Colombia. Mr. Zapata was told where to go, who to meet and where to deposit the funds. Mr. Zapata's name was used without his knowledge to prop up fictitious companies. There is, therefore, a large gap between the suspected source of these proceeds and Mr. Zapata's subjective knowledge and belief. The government cannot fill this evidentiary gap with an expert's generalized testimony about how traffickers launder money. To allow such proof to substitute for individualized evidence would effectively collapse the distinction between generic money laundering and drug-proceeds laundering, contrary to the Commission's design in §2S1.1.

There is thus no "reliable and specific evidence" tying Mr. Zapata to such knowledge.

4

At most, the government has shown that he made deposits that resembled transactions that experts say are "typical" of drug organizations. That is insufficient to support a six-level increase under §2S1.1(b)(1). The Court should therefore sustain Mr. Zapata's objection and strike the enhancement.

## II. Business of Laundering Funds USSG § 2S1.1(b)(2)(C)

The amended PSI recommends a four-level enhancement pursuant to USSG § 2S1.1(b)(2)(C) because the Defendant was in the business of laundering funds. However, the facts of this case simply do not support such an enhancement.

First, the guideline's four-level increase applies only where, considering the "totality of the circumstances," the defendant was actually "in the business of laundering funds," as indicated by non-exhaustive factors such as regularity, duration, multiple sources, substantial revenue, prior similar convictions, and undercover statements reflecting those factors. See U.S.S.G. § 2S1.1 cmt. n.4. *United States v. Salinas-Salcedo*, 2025 WL 2505758, at *2 (7th Cir. Sept. 2, 2025) (enumerating the six factors and emphasizing they are applied to determine whether conduct was sufficiently extensive to amount to a business). In *Salinas-Salcedo*, the enhancement fit because the defendant facilitated 24 transactions over 2½ years, laundered roughly $2.97 million, earned about $44,526 in commissions, and described his regular laundering activity to undercover agents—facts the court deemed a "model application" of the enhancement. *Id*.

By contrast, the Fifth Circuit vacated the enhancement in *U.S. v. Delgado* where the record largely showed meetings, pitches, and attempts; the "glaring omission" was any successful

5

laundering, and the evidence did not establish regular engagement, multiple sources, or substantial revenue. 608 F. App'x 230, 236 (5th Cir. 2015).

Although the Eleventh Circuit has not addressed what it means to be "in the business" of laundering funds, it has, in evaluating another guideline provision, determined that "in the business" requires "more than isolated, casual, or sporadic activity." *United States v. Ramirez*, No. 22-13216, 2024 WL 1090720, at *2 (11th Cir. Mar. 13, 2024) referring to *United States v. Saunders*, 318 F.3d 1257, 1265 (11th Cir. 2003) (determining the meaning of "in the business" of receiving and selling stolen property).

Mr. Zapata's offense boils down to a short burst of deposits in a very short period of time: August 2023 to September 2023. He was operating as a purported runner, not as a market-making launderer "in the business" like the professional "fence" analogy that motivates the enhancement and underpins *Saunders*. There is absolutely no evidence that Mr. Zapata was running a stand-alone laundering enterprise, cultivating multiple customer sources, or generating "substantial revenue" from laundering services. Rather, Mr. Zapata was recruited by his friend Daniel Martinez to make deposits over a brief period. Additionally, Mr. Zapata was paid very little.

This pattern fails several Application Note 4 factors (regularity over an extended period, multiple sources, substantial revenue) that supported the enhancement in *Salinas-Salcedo* (24 transactions/2½ years; admissions; $44,526 in commissions) and is more consistent with *Delgado* (no regular laundering; no multiple sources; no substantial revenue) where the enhancement was unsupported. Indeed, the evidence establishes no more than the "isolated,

casual, or sporadic activity" which is insufficient to qualify as being "in the business." *See Ramirez,* 2024 WL 1090720, at *2. Because the evidence falls well short of the Note 4 factors as well as the Eleventh Circuit's "in the business" test, the § 2S1.1(b)(2)(C) enhancement does not apply. For these reasons, Mr. Zapata's Total Offense Level should be 20, with an advisory guideline range of 33-41 months.

## SENTENCING MEMORANDUM AND ARGUMENTS

It is well established that a sentencing court "may not presume that the Guideline range is reasonable," but rather "must make an individualized assessment based on the facts presented." *Gall v. United States,* 552 U.S. 38, 50 (2007). The Gall Court specifically rejected the use of rigid mathematical formulas to determine whether a variance from the Guidelines' sentence range is justified. *Id.* at 47. The Court also rejected the idea that "extraordinary circumstances" are required to justify a sentence outside the Guidelines' advisory range. *Id.*

Accordingly, after calculating the proper offense level under the Guidelines and giving the government and the defendant the opportunity to argue for the sentence they believe to be appropriate, the district judge must consider each of the § 3553(a) factors and "tailor the sentence" to fit the circumstances of the case. *United States v. Booker*, 543 U.S. 220, 245 (2005). The import of Booker is that "sentencing judges have broad discretion to impose a non-guideline sentence by weighing the factors under § 3553(a)." *United States v. Robertson*, 662 F.3d 871, 875 (7th Cir. 2011); *see also United States v. Gomez*, 955 F.3d 1250, 1255 (11th Cir. 2020) ("failing to consider the 18 U.S.C. 3553(a) factors" would give rise to

"significant procedural error"). Moreover, the Court must fashion the ***least restrictive sentence*** that vindicates the sentencing imperatives of 18 U.S.C. § 3553(a)(2). See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007). Section 3553(a) provides:

    (a)    The court shall impose a sentence ***sufficient, but not greater than necessary***, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

(1) the nature of the circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines—

(5) any pertinent policy statements—

(A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code . . . .

(6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

Application of the § 3553(a) factors allow a sentencing court "to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." *Pepper v. United States*, 131 S.Ct. 1229, 1239-40 (2011) (internal quotations and citations omitted). As applied to this case, these factors urge a sentence well below that urged by the Sentencing Guidelines, which would be "sufficient, but not greater than necessary, to accomplish the sentencing goals advanced." *Kimbrough*, 552 U.S. at 111.

I. **3553 FACTORS**

*A. Nature of the Offense and Defendant History and Characteristics*:

Count 1 of the Superseding Indictment in this case charged Mr. Zapata with conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h). He went to trial and was convicted.

It is well established that a sentencing court "may not presume that the Guideline range is reasonable," but rather "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). The Gall Court specifically rejected the use of rigid mathematical formulas to determine whether a variance from the Guidelines' sentence range is justified. *Id.* at 47. The Court also rejected the idea that "extraordinary circumstances" are required to justify a sentence outside the Guidelines' advisory range. *Id.* Mr. Zapata respectfully requests that this court consider his *actual* role in the offense, which is incompatible with the elevated guidelines range proposed by the PSI.

Mr. Zapata is a 38-year-old first-time offender. He was born in Medellin, Colombia and comes from a loving and supportive family, as demonstrated by the outpouring of

9

letters attached to this Sentencing Memorandum.

Until this offense, Mr. Zapata worked as a painter alongside his cousins in Connecticut. Growing up in Colombia, Mr. Zapata experienced poor socioeconomic conditions in a bad neighborhood with guns and drug violence. His home was a one-bedroom and one-bathroom house with approximately 20 family members in the household. He went to bed with an empty stomach on several occasions. In 2016, he immigrated to the United States.

In 2020, Mr. Zapata was involved in a horrible car accident that left him hospitalized and in need of lasting physical therapy. Moreover, Mr. Zapata has suffered from mental health struggles that, although insufficient to affect guilt or innocence, have made him vulnerable and suspectable to the kind of influence that Daniel Martinez exerted over him in this case.

### B. *Rehabilitation and Deterrence:*

A sentence below the guidelines is sufficient, but not greater than necessary, for Mr. Zapata's rehabilitation. He is a first-time offender and will certainly be deported when he has completed his sentence. Mr. Zapata's lack of criminal history speak directly to his rehabilitation and weigh strongly in his favor. He has the love an support of his family in Colombia.

As to specific deterrence, a lengthy term of imprisonment is not necessary to protect society from Mr. Zapata. He is not a US resident or citizen and will almost certainly, upon release, be transferred to ICE custody to be processed for deportation. There, he likely will

spend many additional months in custody until ICE receives the necessary travel documents and processes his deportation. For these reasons, it is extremely unlikely that Mr. Zapata will ever commit another crime. See *United States v. Morales-Uribe*, 470 F.3d 1282, 1287 (8th Cir. 2006) ("[T]he need to protect the public from a defendant may be reduced in a case where, upon immediate release from incarceration, the Government will deport the defendant.").

General deterrence is also satisfied by a sentence well below the guidelines. "General Deterrence" aims to deter *others* from committing crimes. The instant offense is a serious crime, no doubt, but sentencing Mr. Zapata to a lengthy prison term is not necessary for purposes of general deterrence. He is not a high-profile defendant who lived a lavish lifestyle or made a living from illicit activity. The public is, therefore, unlikely to see the sentence we propose as lenient treatment versus that of a lengthy prison sentence.

### C. Retribution and Policy Statements:

Although retribution is a statutory factor under §3553(a), the overriding aim of sentencing principles set forth in statutes and reported cases, is for the Court to achieve a sentence "sufficient but not greater than necessary." See *United States v. Adelson, 441 F.Supp. 2d 506, 515 (SDNY 2006) ("We* are aware of no empirical evidence or studies indicating that a long prison sentence is necessary to achieve the retributive and general deterrence objectives applicable to a case like this one").

Title 18 U.S.C. §3553(a) expressly dictates that "[t]he Court shall impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in this

subsection." *(emphasis added)*. As Judge Rakoff pointed out in *Adelson*. the operative word in this congressional mandate, is "necessary." *441 F.Supp.2d at 515*. Under Factor 3 in §3553(a), Congress directs the Court to consider a wide range of alternatives to imprisonment if the availability of those alternatives would render a prison sentence 'unnecessary."

### D. *Advisory Guidelines and Policy Statements:*

The PSR finds Mr. Zapata's advisory guideline range is a Total Offense Level of 30, Criminal History I, and a guideline imprisonment range of 97 to 121 months. For reasons set forth above, Mr. Zapata respectfully submits that this recommended guideline range is incorrectly calculated. Accordingly, a sentence below the guidelines we propose (Total Offense Level 20) would be a reasonable and appropriate sentence.

### E. *Avoiding Disparity with Similar Offenders*

Section 3553(a)(6) is concerned with unwarranted disparities in sentences among federal defendants. See *United States v. Willis*, 139 F.3d 811, 812 (11th Cir. 1998) (per curium); United States v. Clark, 434 F.3d 684, 687 (4th Cir. 2006) ("The sole concern of section 3553(a)(6) is with sentencing disparities among federal defendants.") (emphasis omitted). One of the purposes of the Sentencing Commission, and therefore the Sentencing Guidelines, is to "provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar criminal conduct. " 28 U.S.C. § 991(b)(1)(B); see also U.S. v. Docampo, 573 F.3d 1091, 1102 (11th Cir. 2009). Mr. Zapata's co-defendant in this case, Geniver Andres Hernandez Arias, was sentenced to 20 months followed by 3 years of supervised release. Daniel Martinez, the person who recruited Mr. Zapata

12

and managed Mr. Zapata's every move, was allowed to plead guilty to a money transmitting offense and sentenced to 18 months imprisonment, followed by two years of supervised release.

Both of these other defendants were demonstrably more culpable than Mr. Zapata, interfacing directly with the money movers in Colombia, traveling to the U.S. specifically for the purpose picking up bulk cash and depositing it into the ATM's.

Accordingly, Edison Zapata submits this Sentencing Memorandum and Motion for Downward Variance in support of a sentence well below the guidelines range.

Respectfully submitted,

BY:   BEATON LAW FIRM, P.A.

*s/ Marcos Beaton Jr.*
**Marcos Beaton, Jr.**
**Florida Bar No. 573787**
**2525 Ponce De Leon Blvd, Suite 300**
**Coral Gables, Florida 33134**
**Tel. (305) 478-1991**
**Email: mbeaton@beatonlawfirm.com**

## CERTIFICATE OF SERVICE

I HEREBY certify that I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

*s/ Marcos Beaton Jr.*
**Marcos Beaton, Jr.**